IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Dominique L. Alexander, | ) | C/A No. 7:18-cv-03065-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Bayerische Motoren Werke AG; | ) | |
| BMW of North America, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter comes before the Court on Defendant Bayerische Motoren Werke AG's ("BMW AG") Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 36, and Plaintiff's Motion for Jurisdictional Discovery, ECF No. 47.[1]  The Motions have been fully briefed and are ripe for review.

## I.   Procedural and Factual History[2]

On June 16, 2017, Plaintiff—a citizen of North Carolina—was driving her 2015 BMW 528i along Interstate 85 near Cowpens, South Carolina.  Due to heavy traffic, Plaintiff stopped her vehicle in the left lane.  After coming to a complete stop, a 2004 Dodge SUV struck the rear of Plaintiff's vehicle.  The force of the collision pushed Plaintiff's vehicle into three vehicles ahead of it.  Additionally, Plaintiff's vehicle left the left lane and struck a guardrail.  The back of the driver's seat in Plaintiff's vehicle collapsed

---

[1] The parties also filed motions related to the Court's consideration of Plaintiff's Motion for Jurisdictional Discovery.  *See* ECF Nos. 61, 65.  As set forth below, these Motions are rendered moot by the Court's ruling.

[2] Unless otherwise indicated, the Court's recitation of the factual allegations comes from Plaintiff's Amended Complaint.

1

and the driver's front airbag did not deploy. Therefore, although Plaintiff was wearing a seatbelt, she was seriously injured. Her injuries include subarachnoid bleeding with loss of consciousness, fractured vertebra, fractured ribs, fractured nose, bilateral frontal fractures extending into the frontal sinuses, and left forearm and wrist fractures.

On November 13, 2018, Plaintiff filed a Complaint against Defendants Bayerische Motoren Werke AG and BMW of North America ("BMW NA"). ECF No. 1. On May 31, 2019, Plaintiff filed an Amended Complaint, alleging six causes of action against Defendants: (1) strict liability – design defect; (2) strict liability – manufacturing defect; (3) strict liability – failure to warn; (4) negligence, gross negligence, willful and wanton conduct – design defect; (5) negligence, gross negligence, willful and wanton conduct – manufacturing defect; and (6) negligence, gross negligence, willful and wanton conduct – failure to warn. ECF No. 30. Additionally, Plaintiff alleged a seventh cause of action for punitive damages against Defendant BMW NA. *Id.* at 27—28.

Defendant BMW NA filed an Answer to the Amended Complaint, and Defendant BMW AG filed a Motion to Dismiss for Lack of Personal Jurisdiction. ECF Nos. 32, 36. Plaintiff filed a Response in Opposition to Defendant BMW AG's Motion to Dismiss, and Defendant BMW AG filed Reply. ECF Nos. 46, 50. Additionally, Plaintiff filed a Motion for Jurisdictional Discovery, asking the Court to permit her to conduct jurisdictional discovery in the event the Court was inclined to grant Defendant BMW AG's Motion to Dismiss. ECF No. 47. Defendant BMW AG filed a Response in Opposition to Plaintiff's Motion for Jurisdictional Discovery and also filed a Citation of Supplemental Authority in Support of Its Motion to Dismiss for Lack of Personal Jurisdiction. ECF Nos. 51, 53.

On January 6, 2020, the case was reassigned from the Honorable Timothy M. Cain, United States District Judge for the District of South Carolina, to the undersigned. ECF No. 54.  On April 8, 2020, the Court issued a Text Order finding that it was "inclined to grant LIMITED jurisdictional discovery as to the question of specific personal jurisdiction." ECF No. 57.  However, the Court noted that Plaintiff did not submit proposed discovery requests with her Motion for Jurisdictional Discovery.  *Id.*  Therefore, the Court ordered Plaintiff to file the specific requests that she would like to propound and cautioned Plaintiff "that her proposed requests should be limited in scope to the question of specific jurisdiction."  *Id.*

In response, Plaintiff filed a Motion for Permission to Serve Limited Jurisdictional Discovery.  ECF No. 61.  Plaintiff submitted draft interrogatories, requests for production, and requests to admit.  *Id.*  Despite the Court's admonition that it would not consider questions related to general personal jurisdiction, Plaintiff nonetheless suggested numerous proposed requests on general jurisdiction.  *Id.*  Defendant BMW AG filed a Response in Opposition to Plaintiff's Motion for Permission to Serve Limited Jurisdictional Discovery.  ECF No. 63.  Defendant BMW AG also labelled this Response a Motion to Strike and refiled the document as a Motion to Strike.  ECF No. 65.

After Defendant BMW AG filed its Response, the Court issued a Text Order stating that it "has adequate information and arguments from the parties to issue a decision on the pending Motions for Jurisdictional Discovery." ECF No. 64 (internal citations omitted).  Therefore, the Court informed the parties that no further Responses or Replies should be filed unless ordered by the Court.  *Id.*  Having reviewed the filings of the parties, the Court turns now to the merits of the pending motions.

II.  **Legal Standard**

When a defendant challenges the Court's personal jurisdiction under Rule 12(b)(2), the plaintiff has the burden of proving that jurisdiction exists by a preponderance of the evidence.  *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997).  "If the existence of jurisdiction turns on disputed factual questions[,] the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  However, when "a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, but rather relies on the complaint and affidavits alone, 'the burden on the plaintiff is simply to make a prima facie showing of sufficient jurisdictional basis in order to survive the jurisdictional challenge.'"  *In re Celotex Corp.*, 124 F.3d at 628 (quoting *Combs*, 886 F.2d at 676).  "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff."  *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993)).  Additionally, "'[i]n reviewing the record before it, a court may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment.'"  *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306 (D.S.C. 1992) (quoting *VDI Techs. v. Price*, 781 F. Supp. 85, 87 (D.N.H. 1991)).

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law.  Fed. R. Civ. P. 4(k)(1)(A).  Thus, "for a district court to validly

4

assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." *Christian Sci. Bd. of Dirs. of First Church of Christ, Sci. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001) (citing *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 134 (4th Cir. 1996)).

> South Carolina's long-arm statute provides as follows:
>
> A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's: (1) transacting any business in this State; (2) contracting to supply services or things in the State; (3) commission of a tortious act in whole or in part in this State; (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; (5) having an interest in, using, or possessing real property in this State; (6) contracting to insure any person, property, or risk located within this State at the time of contracting; (7) entry into a contract to be performed in whole or in part by either party in this State; or (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. Code Ann. § 36-2-803(A). "South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997) (citations omitted). "Consequently, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Id.* (quoting *Stover*, 84 F.3d at 135–36). The central constitutional question the Court must address is whether the defendant has established "minimum contacts with [South Carolina] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Viewed through this constitutional lens, personal jurisdiction may arise through specific jurisdiction, which is based on the conduct alleged in the lawsuit, or through general jurisdiction. *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). Under general jurisdiction, a defendant's contacts or activities in the forum state do not provide the basis for the suit. *Id.* Instead, when a defendant has "continuous and systematic" contacts with the forum state, the defendant "may be sued in [the forum] state for any reason, regardless of where the relevant conduct occurred." *Id.* (citations omitted). When the defendant is a corporation, "general jurisdiction requires affiliations 'so continuous and systematic as to render [the foreign corporation] essentially at home in the forum State,' *i.e.*, comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 159 n.11 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

In contrast, under specific jurisdiction, a defendant may be sued in this Court if the litigation results from alleged injuries that arose out of or related to their contacts with South Carolina and those contacts were sufficient. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). To determine whether specific jurisdiction exists, courts employ a "minimum contacts" analysis that examines: "(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal

quotations omitted). This analysis focuses on the relationship between the defendant, the forum, and the litigation; therefore, the Supreme Court has emphasized "[t]wo related aspects of this necessary relationship." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "First, the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* (internal quotation omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Second, [the] minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (internal quotation omitted) (citing *Int'l Shoe Co.*, 326 U.S. at 319).

### III. Analysis

As set forth above, personal jurisdiction may lie where a court has either general or specific jurisdiction over a defendant. In its Motion to Dismiss, Defendant contends that the Court has neither general nor specific jurisdiction. The Court turns first to general jurisdiction.

#### A. Jurisdictional Discovery

After filing its Response in Opposition to Defendant BMW AG's Motion to Dismiss, Plaintiff filed a Motion for Jurisdictional Discovery. ECF No. 47. Plaintiff stated that she "should be allowed to discovery documents relating to sales figures, customers, payments, complaint and claims correspondence, advertising and marketing information between BMW AG and any South Carolina citizen or entity, distribution agreements between BMW AG, BMW NA, and BMW Manufacturing, and BMW AG's standard operating procedures for labeling, studies, regulatory approval and compliance with U.S. safety standards." *Id.* at 2. The Court directed Plaintiff to file her proposed discovery requests so that the Court could review them. ECF No. 57. In that Order, the Court

7

specifically directed Plaintiff not to submit proposed questions as to general jurisdiction. *Id.*

In response to the Court's Order, Plaintiff filed a second Motion for Jurisdictional Discovery, which contained her proposed discovery requests.  ECF No. 61.  All told, Plaintiff asked for leave to serve 12 interrogatories on specific jurisdiction, 6 interrogatories on general jurisdiction, 13 requests to produce on specific jurisdiction, 5 requests to produce on general jurisdiction, 26 requests to admit on specific jurisdiction, and 6 requests to admit on general jurisdiction.  *Id.*  Additionally, Plaintiff requested the right to conduct a 30(b)(6) deposition.  *Id.*  Defendant BMW AG filed a consolidated Response in Opposition and Motion to Strike.  ECF Nos. 63, 65.

After reviewing the submissions of the parties and the applicable case law, the Court finds that jurisdictional discovery is not warranted because it would be futile.  As Plaintiff acknowledges, District Courts have broad discretion in resolving discovery disputes.  *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003).  The Fourth Circuit has held that "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Id.* at 402–03 (collecting cases).  Here, the Court finds that Plaintiff failed to allege specific jurisdictional facts, while Defendant BMW AG offered specific denials in its briefing and supporting Declaration.  Moreover, Plaintiff's proffered discovery requests are overbroad and not likely to lead to information that rebuts Defendant BMW AG's specific denials.  Accordingly, Plaintiff's Motion for Jurisdictional Discovery, ECF No. 47, is DENIED, Plaintiff's Motion for Permission to Serve Limited

Jurisdictional Discovery, ECF No. 61, is DENIED AS MOOT, and Defendant BMW AG's Motion to Strike, ECF No. 65, is DENIED AS MOOT.

### B.  General Jurisdiction

In recent years, the Supreme Court has significantly narrowed the reaches of general personal jurisdiction.  Most recently, in *Daimler AG v. Bauman*, the Supreme Court clarified that general jurisdiction over corporate defendants will only exist in three circumstances: (1) in the forum where the defendant is incorporated; (2) in the forum where the defendant has its principal place of business; and (3) in a forum where a "corporation's affiliations with the [forum] are so continuous and systematic as to render [it] essentially at home in the forum State."  571 U.S. 117, 138–39 (2014) (internal quotations omitted).  Additionally, the Court can exercise general personal jurisdiction over foreign corporations "if the foreign corporation is a parent company with a subsidiary that is subject to the court's general personal jurisdiction and if the subsidiary functions as the agent or mere department of the parent in a manner that justifies treating it as an alter ego and/or piercing the corporate veil."  *See Wright v. Waste Pro USA Inc.*, No. 2:17-cv-02654-DCN, 2019 WL 3344040, at *4 (D.S.C. July 25, 2019) (internal quotations and citations omitted).

Here, Defendant BMW AG is "a German automobile, motorcycle, and engine manufacturing company organized and incorporated under the laws of the Federal Republic of Germany with its headquarters at Munich, Germany."  ECF No. 36-2 at 2.  As such, the only way this Court can have general personal jurisdiction over Defendant BMW AG is if its contacts with South Carolina are so continuous and systematic as to render it essentially at home in South Carolina.  *Daimler AG*, 571 U.S. at 139.

Plaintiff has alleged that Defendant BMW AG "has purposefully availed itself of the privilege of conducting business in the State of South Carolina, has conducted substantial business in the State of South Carolina, [and] regularly caused its products to be sold in the State of South Carolina . . . ."  ECF No. 30 at 3.  However, Plaintiff's Amended Complaint does not describe Defendant BMW AG's role in the design, manufacture, distribution, and sales of BMW automobiles, nor does it describe Defendant BMW AG's contacts with the State of South Carolina.  For that, the Court turns to Defendant BMW AG's Motion to Dismiss.

Defendant BMW AG submitted a Declaration from Jakob Hölldobler and Dr. Carsten Lammers—in-house legal counsel for Defendant BMW AG—which states that Defendant BMW AG "is a publicly traded German stock company" that has a Board of Managers, none of whom are also officers of employees of Defendant BMW NA.  ECF No. 36-2 at 2.  Defendant BMW NA "is an indirect subsidiary of BMW AG, but is a separate, distinct, and independent corporate business entity from BMW AG." *Id.* at 3.  "BMW NA is the exclusive United States distributor for new BMW brand vehicles to the public in the United States." *Id.* at 4.  Defendant BMW AG "does not control the distribution of BMW vehicles in the United States, including into the State of South Carolina." *Id.*  "Once BMW NA purchased [Plaintiff's] vehicle from BMW AG in Germany, BMW AG no longer had any ownership or control over [Plaintiff's] vehicle." *Id.*

Moreover, Defendant BMW AG: (1) "does not make direct sales of BMW vehicles to dealers or to the general public in the State of South Carolina"; (2) "does not maintain a sales force in the State of South Carolina"; (3) "does not distribute BMW vehicles to dealers or the general public in the State of South Carolina"; (4) is not licensed or

authorized to do business in the State of South Carolina; (5) does not have an agent for service of process in the State of South Carolina; (6) is not a taxpayer in the United States, including the State of South Carolina; and (7) does not own real estate in the State of South Carolina. *Id.* at 4–5.

In response, Plaintiff contends that "[i]n the State of South Carolina, and globally, BMW AG and its subsidiaries do business as 'BMW Group.'" ECF No. 46 at 3. Plaintiff essentially alleges that Defendant BMW AG is an alter ego of the "BMW Group" and exerts direct control over subsidiary companies throughout the United States. Plaintiff attempts to tie Defendant BMW AG to BMW Manufacturing Co., LLC—an entity with its principal place of business in South Carolina—through the "BMW Group" label. However, as Defendant BMW AG points out, "[t]he term 'BMW Group' is used to collectively describe the activities of a group of entities and brands including BMW AG and BMW NA. It is not a legal entity and it has no legal existence." ECF No. 36-2 at 3. Plaintiff focuses its discussion on the purported structure of the "BMW Group" and the revenue that the entities receive from extensive business operations in the United States. Additionally, Plaintiff argues that Defendant BMW AG conducts Supervisory Board meetings at the Spartanburg, South Carolina plant and frequently exchanges employees with the Spartanburg, South Carolina plant.

Having reviewed the arguments and submissions of the parties, the Court finds that Plaintiff has failed to show that Defendant BMW AG's contacts with South Carolina are so continuous and systematic as to render it essentially at home in South Carolina. *See Daimler AG*, 571 U.S. at 139. There is no evidence in the record that Defendant BMW AG has any substantial contacts with South Carolina, much less the type of

11

continuous and systematic contacts required to support a finding of general jurisdiction. Therefore, the only other means of demonstrating general jurisdiction is through the alter ego or piercing the corporate veil.

"South Carolina law instructs courts not to 'extend jurisdiction to the parent based *solely* on the activities of a subsidiary where those activities are *unrelated to the cause of action* and do not bear a substantial connection to the case at hand.'" *ScanSource, Inc. v. Mitel Networks Corp.*, No. 6:11-cv-00382-GRA, 2011 WL 2550719 at *4 (D.S.C. June 24, 2011) (quoting *Builder Mart of Am., Inc. v. First Union Corp.*, 563 S.E.2d 352, 358 (S.C. Ct. App. 2002), *overruled on other grounds by Farmer v. Monsanto Corp.*, 579 S.E.2d 325 (S.C. 2003)). Here, there is no evidence that there is any connection between the subject matter of this case—i.e., Plaintiff's BMW 528i—and South Carolina or BMW Manufacturing Co., LLC. To be clear, Plaintiff's vehicle was not manufactured, assembled, or sold by BMW Manufacturing Co., LLC., which is fatal to Plaintiff's attempt to invoke general jurisdiction by piercing the corporate veil.

Similarly, Plaintiff cannot show general jurisdiction through the agency theory. *See Wright v. Waste Pro USA Inc.*, No. 2:17-cv-02654, 2019 WL 3344040 at *5 (D.S.C. July 25, 2019) ("In determining whether to exercise jurisdiction based on the alter-ego theory, the court must find the following factors: (1) common ownership; (2) financial independence; (3) degree of selection or executive personnel and failure to observe corporate formalities; and (4) the degree of control over marketing and operational policies." (citation omitted)). Plaintiff summarily claims that Defendant BMW AG, "publicly holding itself out and doing business as BMW Group, exerts complete control over its subsidiary entities, including BMW [NA] (through which BMW Group distributes new

vehicles to its customers through approximately 350 BMW dealerships, among others) . . . [and] BMW Manufacturing Co., LLC (through which BMW AG manufactures a significant portion of its global production of vehicles right her in Spartanburg, South Carolina) . . . ."  ECF No. 46 at 3.  Moreover, Plaintiff claims that "BMW Manufacturing is much more than a subsidiary" because Defendant BMW AG "hold[s] onsite Supervisory Board meetings at the Spartanburg plant" and, in July 2019, "announced the election of Oliver Zipse as its next CEO during a meeting in South Carolina."  *Id.* at 7–8.  According to Plaintiff, these facts subject Defendant BMW AG to general jurisdiction in South Carolina under an agency theory.  The Court disagrees.

While BMW Manufacturing Co., LLC is an indirect subsidiary of Defendant BMW AG, there are four intermediary entities.  ECF No. 36-2 at 2.  Defendant BMW AG offered evidence that Defendant BMW AG does not maintain BMW Manufacturing Co., LLC's books and records or file its tax returns.  ECF No. 36-2 at 4.  Plaintiff, on the other hand, has not provided proof of any of the four agency factors beyond mere allegations, "much less proof of all four to the requisite degree of specificity."  *Builder Mart of Am., Inc.*, 563 S.E.2d at 358.  Even if Defendant BMW AG was a parent company that owns the Spartanburg, South Carolina manufacturing plant, the Court cannot hear this case because BMW Manufacturing Co., LLC is wholly unrelated to the cause of action (i.e., the design, manufacturing, and distribution of Plaintiff's vehicle).  "As the United States Supreme Court has explained, 'when the *minimum contact* that is a substitute for physical presence consists of property ownership it *must, like other minimum contacts, be related to the litigation*.'"  *Id.* (quoting *Burnham v. Super. Ct. of Cal.*, 495 U.S. 604, 620 (1990)) (internal quotations omitted).  To hold otherwise would "subject foreign corporations to

13

general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' [the Supreme Court] rejected in *Goodyear*." *Daimler*, 571 U.S. at 136 (quoting *Goodyear Dunlop Tires Ops., S.A.*, 564 U.S. at 929). Accordingly, the Court finds that it does not have general jurisdiction over Defendant BMW AG. Therefore, the Court turns to the question of specific jurisdiction.

### C. Specific Jurisdiction

Defendant BMW AG contends the Court lacks specific personal jurisdiction because Plaintiff's claims do not arise out of or relate to contacts between Defendant BMW AG and South Carolina.

As stated above, Plaintiff's vehicle was not manufactured in South Carolina, nor did Defendant BMW AG market Plaintiff's vehicle to or in South Carolina. Therefore, Defendant BMW AG contends that it "has no direct or indirect, purposeful contacts with South Carolina such that Plaintiff is unable to establish that [her] claims arise out of any contact between BMW AG and South Carolina." ECF No. 36-1 at 19. In response, Plaintiff contends that "[t]his lawsuit arises out of BMW AG's decision to build a manufacturing plant, open dealerships, and sell cars in South Carolina, which puts BMW AG on notice that it could be hailed into court for products liability claims for defects in any of its models." ECF No. 46 at 14.

To determine whether specific jurisdiction exists, the Court must examine: "(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be

constitutionally reasonable." *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotations omitted).  Plaintiff must show that Defendant BMW AG did "something more" than place Plaintiff's vehicle in a stream of commerce which might bring the vehicle into South Carolina for the Court to have specific personal jurisdiction.  *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 111 (1987).

Having reviewed the arguments and submissions of the parties, the Court finds Plaintiff has failed to demonstrate that the Court has specific jurisdiction over Defendant BMW AG.  Plaintiff's vehicle was designed and manufactured outside of the United States and was sold to Defendant BMW NA.  Then, Defendant BMW NA sold Plaintiff's vehicle to a dealership in Louisiana, and Plaintiff leased her vehicle from a dealership in Baton Rouge.  Plaintiff was then in a motor vehicle accident while driving her vehicle through South Carolina.  Although the accident happened in South Carolina, the Court is constrained to agree with Defendant BMW AG that "Plaintiff failed to sufficiently plead the existence of even a single fact demonstrating that BMW AG engaged in contacts with South Carolina or with South Carolina's consumers."  ECF No. 36-1 at 23.  Plaintiff's allegations might be sufficient under a "stream of commerce" theory; however, the Supreme Court has made clear that the defendant must do something more than place the item in a stream of commerce that ends in the forum state.  *See Asahi Metal Indus. Co., Ltd.*, 480 U.S. at 111.

Plaintiff has not articulated what affirmative step Defendant BMW AG took to purposefully direct any activity towards South Carolina.  As Defendant BMW AG points out in its Declaration, "BMW AG does not control the distribution of BMW vehicles in the

15

United States, including into the State of South Carolina. Once BMW NA purchased the subject vehicle from BMW AG in Germany, BMW AG no longer had any ownership or control over the subject vehicle." ECF No. 36-2 at 4. Thus, the Court concludes that it does not have specific personal jurisdiction over Defendant BMW AG. *See Sutton v. Motor Wheel Corp., LLC*, No. 3:17-01161-MGL, 2018 WL 2197535 at *4 (D.S.C. May 14, 2018) ("Though HZR manufactured tires for distribution in the United States and entered into a contract with Leopard to distribute those tires, those facts do not constitute purposeful availment of the South Carolina market."). Numerous other courts have addressed the question of personal jurisdiction over BMW AG, and it appears that most Courts have reached the same conclusion the Court reaches today. *See Fischer v. BMW of N. Am., LLC*, No. 18-cv-00120-PAB-MEH, 376 F. Supp. 3d 1178 (D. Col. March 25, 2019); *Tomas v. Bayerische Motoren Werke AG*, No. 5:17-cv-01664-AKK, 2018 WL 6181172 (N.D. Alab. Nov. 27, 2018); *Brown v. BMW of N. Am., LLC*, No. 1:14-cv-00931-JMS-DML, 2016 WL 427517 (S.D. Ind. Feb. 4, 2016).

## IV. Conclusion

For the foregoing reasons, Defendant BMW AG's Motion to Dismiss, ECF No. 36, is **GRANTED,** and Plaintiff's claims against Defendant BMW AG are **DISMISSED WITHOUT PREJUDICE**. Furthermore, Plaintiff's Motion for Jurisdictional Discovery, ECF No. 47, is **DENIED.** In light of these rulings, Plaintiff's Motion for Permission to Serve Limited Jurisdictional Discovery, ECF No. 61, and Defendant BMW AG's Motion to Strike, ECF No. 65, are **DENIED AS MOOT**.

IT IS SO ORDERED.

                                                      s/ Donald C. Coggins, Jr.
                                                      United States District Judge

May 1, 2020
Spartanburg, South Carolina